Good morning. I'd like to reserve five minutes for rebuttal. My name is Eric Bryant-Seuth and I represent Dr. and Dr. Neumann. We have an interesting case here involving a very expensive motor vehicle that was severely damaged in an accident in March of 2012. The issue becomes whether or not Allstate acted in good faith or appropriately in delaying their completion of the appraisal process until November of 2012. During that time period, and as the record reflects, the Neumanns paid approximately $4,000 a month in car payments, paid for continuing insurance with Allstate Insurance, paid for storage on the vehicle, and during that time period, the vehicle went down in value, salvage value, from $72,000 to $50,000. So we are talking about a significant amount of money. The main issue here is whether Judge Leteau was a qualified appraiser, and that is the issue which Judge Otero found in the defendant's favor. If we reverse and we remand and Judge Leteau is called to court and he testifies as the only plaintiff's witness, and under 702 Judge Otero finds that he's not qualified as a preliminary fact matter, doesn't that end the case? No. Why? With regard to a 702 finding, you have to look beyond Judge Leteau's qualification. Judge Leteau was qualified to make a determination as to what is fair. He says he was qualified, but as a preliminary fact, doesn't the trial judge have to determine whether he has some special knowledge which allows him to give an opinion? Yes. Well, and he finds Judge Leteau, you're a grand judge, but you don't know cars from a hill of beans, and therefore I'm not going to allow you to testify as an expert. What would be wrong with that? Well, wouldn't Judge Otero have to listen to the evidence as to what Judge Leteau's background is, how many other cases he's decided involving property damage? No. I couldn't find any claim by Judge Leteau that he'd ever looked at a car damage case, had he? Oh, he has. He's decided many of those cases. Has he ever actually appraised a vehicle? No, but is there a requirement under the contract that he has to appraise a vehicle? I think so, and district court thought so. That's true. So what's wrong with the district court's position? Because Judge Leteau accepted the estimate of Eli's Body Shop as being the appraised damaged amount. Isn't that exactly the problem? He did not himself act as an appraiser. He doesn't purport to be qualified to act as an appraiser. He adopted somebody else. He was acting as a judge, not as an appraiser. I'm a judge. I don't think I'm qualified as an appraiser just because I'm a judge. I decide all sorts of things. That doesn't mean I'm knowledgeable in that field. I wind up basing my decision on what experts in the field come in and say. That's what Judge Leteau did. That doesn't make him an appraiser. He's ruled on medical malpractice cases, I bet. That doesn't make him a doctor. No, but that's a different standard. Why? Because the appraisal standard in the contract is not defined. It says qualified appraiser. And what is the definition? If you wanted to get your house appraised because you need to get a mortgage, are you going to call Judge Leteau? Of course not. Why not? Because the bank would not accept that because the bank has written guidelines and rules which must be followed. So why should we accept the notion of qualified appraiser as open to Judge Leteau? Also, appraisers in real estate situations are licensed. In situations such as this, there is no license requirement to be a licensed car appraiser. Suppose you're submitting your estate tax return. You've got these antiques you're claiming a deduction for because your father passed away and left them in a museum. Does Judge Leteau, a qualified appraiser, the IRS should accept as a basis for valuing those antiques? If he has the basis to render that opinion, yes. Does being a judge give him the basis to render that opinion? But under the IRS standards that you've just espoused, aren't there rules saying what an appraiser requirements are? And I think you'll find that there are if we're going to bring in the IRS rules. They have written guidelines as to what is required for that appraiser. But what we're losing sight of is even if Judge Leteau is not qualified, Allstate Insurance doesn't bring in their appraiser until November, nine months after the accident. Their first person they say is an appraiser, he wasn't an appraiser. He was a body shop mechanic who owned a body shop. He says he has never been a qualified appraiser. Mr. Weiss, the appraiser they selected in September after the lawsuit was filed, he said I never agreed to be an appraiser in this. He then writes his decision in November of 2012. He writes what he feels the damage is, which is more than what Allstate first came in with. Who would be the qualified appraiser? Would Eli's body shop, the guy who wrote the estimate, would he be a qualified appraiser? Could he have been selected? Judge Leteau accepted Eli's position. Then, when it came time for the umpire to make the decision, because Judge Leteau had underwent a heart attack, someone from Regera Coach, which sold the vehicle, he was selected as appraiser. He gave his opinion. And the appraisal process went forward in May of 2013, and the determination was by the umpire that the amount was higher than what Allstate had offered, higher than what Allstate appraisers had found, and halfway in between the two numbers. Here's the bigger question. What duty did Allstate have to act in good faith? Let's assume that the argument that Judge Leteau wasn't qualified. Does Allstate have a duty to do anything during this appraisal process? Look at the dates. The record is clear. The first appraiser said I was never agreed to be appraiser, and he never looked at the car. You have delay after delay after delay, which leads us finally to Mr. Weiss rendering his opinion as to the damage. And how is that different than Judge Leteau accepting Eli's opinion as to the damage? You know, there are things on this record in the argument that may or may not have been foreseeable. For example, the fact that they didn't own the car, that they had to make payments, and they didn't they certainly couldn't use it. It was not usable, and they were still making payments. But I don't know how Allstate would be required to know that. They were making monthly payments. They might have owned it outright. They were informed of that in correspondence, which are attached to the record, which were attached to the motions. How long does Allstate have before they have to comply with the appraisal request by the Newmans in June of 2012? What is a reasonable time period when you're dealing with a car that has a value of $200,000? How long can Allstate just sit back and do nothing? How long can Allstate go to someone, and he says under oath in the record, I didn't know that I was being an appraiser. I've never been an appraiser. Is a body shop operator qualified as an appraiser? Did Allstate breach their own rules? And your question is, did Allstate know this? Yes, Allstate knew that the car was incurring storage charges. Allstate knew, and this is the key point, that the car was financed because they issued the checks, the partial payment checks to the Newmans and to the credit agency that had title on the vehicle. And they were informed as to what the monthly payments were, and they dragged their feet. Thank you. Good morning, Your Honors. Excuse me. I'm James McShane from Shepard Mullin for Allstate. Keep your voice up, would you, Mr. McShane? Pardon? Keep your voice up. I'll do my best. I do have a cold, so I apologize for that. I think we should begin with what the appraisal clause says itself. And keep in mind, this is an automotive liability, and it's car insurance. This is a property damage claim, right? This is a property damage claim. Not liability. Right, but the policy covers both, property damage and liability. The right to an appraisal. Each side will appoint and pay a qualified appraiser, and that appraiser is supposed to state the value. Here, as Judge Otero found, correctly, we think, there was no evidence, as you put it, Judge Bea, that Judge Leteau had any knowledge at all about cars. And, indeed. Well, that's not quite so. He said that he had a great deal of experience in appraising matters such as this. He didn't detail any automobiles, but he had a generalized statement. Why doesn't that raise a tribal issue of fact as to whether the plaintiff has complied with a contractual provision of qualified appraiser? Isn't that up for the jury as to whether he's qualified or not? I don't think it is in this case, especially in light of the fact that it's the judge's job to interpret the contract and to determine what qualified appraiser means. And in this clause, the qualified appraiser has to state the value. And the notion that you don't have to know anything about what it takes to actually repair a Bentley, what kind of parts are needed, how much time it's going to take, what the labor charges are, and how much time even that the owner might be out of use of the car. I don't quite agree with you that the rules of interpretation determine whether the person is qualified or not. The jury, the judge might determine what the word qualified means, but its application to the facts would be done by a jury, would it not? Typically when, first of all, to interpret an insurance policy, that's typically the judge's job based on the ordinary meaning ascribed to a contract. What qualified means is up to the judge. Whether this man is qualified is a factual matter. Whether he's even an appraiser, I think, is up to the judge. And that's going to turn on dictionary meanings of what an appraiser is. Meaning, for example, in Webster's, a person given authority to make a thorough and correct evaluation on property of any kind. And as Judge Otero pointed out in his opinion, and he's correct, California case law is very clear that an appraiser under an insurance appraisal clause has only one function, and that is to examine and declare what the value of the loss was. And I would submit that a judge, such as yourselves, would not be in a position to assess what it takes to repair a car, in particular accident, by looking at the car and determining what it was going to take in terms of time, labor, and materials to work that out. And I think that the decision that Judge Otero made, that the contract meant what it meant. It meant a qualified appraiser for automotive loss is absolutely correct, and it is not something that a judge will do. It is a job for the courts to determine what the policy means. Here, Judge Otero didn't even say he had any qualifications that would enable him to actually assess the loss. And in addition, it was undisputed, he never looked at the car. He didn't see it. He didn't prepare anything. And the plaintiffs, the appellants in their own complaint, alleged that it was all states' breach by failing to prepare an appraisal. And so the notion that the appellant's appraiser didn't have to do the same thing, I think, is a little bit disingenuous there. So why did the process take so long? I mean, the accident was in March of 2012, and payment ultimately gets made in, like, what, July 2013? So we're looking at 16 months. It seems like an awfully long time, and the thrust of plaintiff's claim is that separate and apart from the ultimate payment that was received for the amount determined by the umpire, all state dropped the ball by causing the process to take way longer than it should have. Well, it looks like the process took way longer than you think it should have. It took a long time, Your Honor, but let's keep a couple of things in mind. The complaint was filed the very day that Mr. Weiss conducted his inspection. That was in September of 2012. There was no question that Judge Leteau didn't even get appointed until mid to late July as the other side's appraiser. There was also the issue with Mr. Piombetti. All these facts were laid out, and none of them were disputed. The car wasn't ready for anybody to inspect it because the damage was sufficient that it had to be put on specialized jigs so it could be turned and twisted and looked at. There was an argument, and the letters are all part of the record, in which counsel for all state tried to get things moving so that Mr. Piombetti, who everybody agreed maybe he didn't use the word appraiser, he said he was retained to prepare an estimate. That's what appraisers do. There was no question about that. He wanted the car moved to a neutral location, and there was a big dispute over, boy, all state, you need to pay for it, and all state said, yeah, we will. I think it's September 16th, counsel for the appellant said, you're not moving the car. Well, within a week, another appraiser is out there. He does the appraiser, and they file suit that day. Now, after they filed suit, the plaintiffs flat out refused to work with all state at all. They wouldn't talk to them, and all state had to file a motion after the lawsuit's filed to compel the completion of the appraisal process. That was not all state's fault. That was the appellant's fault. And I think when Judge Otero looked at this, all the facts were laid out, really none of them in dispute. None of the chronology was in dispute. Nobody's qualifications were really disputed. Arguments, yes, but no real dispute over what happened and when it happened. I think the decision was correct. And on de novo review, what we would ask you to do is to write an opinion that looks just like Judge Otero's. We would ask that you affirm. Thank you. Thank you. Justice Clifton, you asked a very important question, what took so long. You asked a very important question, what took so long. And we're talking about a large loss of money and a vehicle carcass that was diminishing in value. We have an accident early March, an accident where there's no question of insurance coverage, no question of liability on the third party. We have a clear damaged vehicle. And we have Allstate dragging their feet at every turn. Don't we also have a difference? The owners felt the car was totaled. Correct. Allstate felt not otherwise. So doesn't that difference get on the scale in this record? I'm not suggesting we're going to make factual findings, but I think that's a fact on this record, isn't it? There was a dispute as to the value. That is the value of the damage. You're very correct. All right. But as it turns out, Allstate kept on going out, looking at the car, writing a new estimate, writing a new estimate. Three different times they went out after significant delays. Well, it does seem to be true that the new estimates or the additional damage was discovered as parts of the car are removed. And there's not a claim, I haven't heard from you a claim, that this car was ready for inspection in total from the very beginning. In fact, it is the case that it took time for the car to be twisted around and examined in, well, point me to record evidence that says the contrary. The record and the evidence is that from day one, Eli's Body Shop had written a detailed estimate based upon their experience, skill, and training of approximately 130,000. That variance never changed from day one. Allstate kept on asking for more proof, more proof, more proof. Finally, the Newman's got so frustrated, they've got a car that they've paid a lot of money. One's a cardiologist, one's in internal medicine at Cedars. They've paid a lot of money for this car. They're paying a lot of money to store the car, to pay for the car on a monthly basis, and they're getting a diminution of value on the carcass. Finally, they get frustrated, and on June 12th, they say, we've got to go to the appraisal process. And what is the appraisal process? It's something that is economically really not feasible for anyone who has a Toyota Camry, but these people have a Bentley GT convertible. So they go into the appraisal process. Now, what's telling in terms of Allstate's understanding of the appraisal process is do they go to an appraiser to give them an appraisal? No. They go to another body shop. Well, let's stop right there because what basis is there for you to argue that a body shop isn't a qualified appraiser, given that your so-called qualified appraiser relied on Eli's estimate and Eli's is a body shop? I don't have a problem with that. I don't have a problem with Mr. P being selected as an appraiser. But the problem was, the problem was, and the record is impeccably clear, Mr. P never agreed. Mr. P is a competitor of Eli's. He does a lot of business with Allstate Insurance. He repairs high-end vehicles. Is he a qualified appraiser? Is the gentleman who wrote the appraiser at Eli, is he a qualified appraiser? I think they're both qualified, but Mr. P didn't agree to serve as an appraiser. Allstate lied. They said he's agreed. In fact, he had never agreed, and this is very clear and undisputed in the record. He had never agreed to be the appraiser. And, in fact, he did not want to go to his competitor's body shop. Well, the latter is certainly true. The former, I'm not so sure about, but I hear your argument. Well, in terms of him not agreeing to be an appraiser, it's clear. The record is when we took the record. What the record seems to indicate is he thought he was supposed to go out and give an estimate. Right. He never agreed to be an appraiser. Well, what's the difference? Well, we have a contract saying. What's the difference? In my mind, there really is nothing. Okay, then. Then you don't have a difference. But he never agreed to. What's the point? He thought he was going to go out and give an estimate, that he didn't know that estimate was going to be attached to a label that said qualified appraiser. What's the difference? Doesn't he have to agree to be an appraiser to participate in the process? Why? Isn't that part of the. . . Did Eli's ever agree to be a qualified appraiser? That's all that Judge Littell relied on. Right. You're correct. Did Eli's ever agree to be a, quote, qualified appraiser? I mean, that's a label without a distinction for me. Let me tell you why I believe you're wrong on that point. Because not only do you have to agree to be a qualified appraiser, you have to participate in the process with the umpire. You have to meet with the Newman's appraiser, Judge Littell, which Judge Littell did meet with Mr. Weiss. The first person they went to did not agree to participate in the appraisal process. There is a difference, Your Honor, between besides writing an estimate and agreeing to participate in the appraisal process. The worry I have, and that's not a worry, we're going to decide a case. It's just another one of a list. The problems about this case were caused. . . Now, am I missing something? Yes. Here's what I think you're missing. At what point in time do the Newman's throw up their hand and say, you haven't given us an appraisal. You haven't participated in the process. We're filing a lawsuit. And the record reflects that Allstate was given a significant period of time saying, Mr. P is not going to be your appraiser. He said he's not going to be your appraiser. He said he's not going to be involved in this process. Eli's is saying, Mr. P's got to go to the car because it's broken down and they have a lien on the vehicle and they don't want it to leave their yard. Mr. P's got to go to the body shop. I don't think that's unreasonable. And the Newman's finally said, come on. We're losing $5,000 a month out of pocket, plus we're incurring storage charges. You got to get off the ball here. And they refused, and then they instructed the lawsuit to be filed in Superior Court, which was later removed. And then when it came time for the appraisal process to take place, there was no letter saying we won't deal with Allstate. There was a letter saying we won't deal with the first attorney who has lied, flat out lied, about whether Mr. P would be the appraiser. And then you have the foot dragging. You interpret it as you will. What we see in this record is he didn't say I will be an appraiser. He said, I'll give you an estimate of what the damages are. Well, as Judge Clifton points out, the difference without a distinction is. But doesn't the appraiser to participate in the process then have to meet with the Newman's appraiser? Doesn't he have to participate in the process? So it's not just writing that estimate. It's participating in the process. It's taking the ball down the field. I understand your position. Thank you very much. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Bea